UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CENDJOU DORVAL,

Petitioner,

-vs-

WILLIAM P. BARR, Attorney General; THOMAS FEELEY, Field Office Director for Detention and Removal, Buffalo Field Office, Bureau of Immigration and Customs Enforcement; JEFFEREY SEARLS, Facility Acting Director Buffalo Federal Detention Facility,

Respondents.

**No. 6:19-cv-06545-MAT**
**DECISION AND ORDER**

## I. Introduction

Proceeding *pro se*, Cendjou Dorval ("Dorval" or "Petitioner") commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("§ 2241") against the named respondents (hereinafter, "the Government" or "Respondents") challenging his continued detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS/ICE"). For the reasons discussed below, the request for a writ of habeas corpus is conditionally granted in part and stayed in part.

## II. Factual Background

Dorval, a native and citizen of Haiti, originally applied for admission to the United States at the San Ysidro Port of Entry in California, on May 31, 2016, through the pedestrian inspection lane. Prior to arriving at the United States border, Dorval had

traveled through Mexico, Guatemala, Nicaragua, Costa Rica, Panama, Colombia, Ecuador, Peru, and Brazil, where he resided for five years. Dorval claimed a fear of returning to Haiti and sought asylum in the United States.

As he lacked proper documents for entry, Dorval was found to be inadmissible pursuant to Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). After conducting a file review, the deportation officer stated that ICE Enforcement and Removal Operations ("ERO") "will exercise prosecutorial discretion with regard to [Dorval]'s custody" and he "will be paroled into the U.S. pending removal hearing." Government's Exhibit A ("Ex. A") Docket No. 4-2, p. 3 of 33.[1] Dorval was released on June 4, 2016, and instructed to report to the Alternatives to Detention Office in Miramar, Florida, on June 10, 2016.

A master calendar hearing was scheduled for March 2017, but it was adjourned at Dorval's request so that he could retain an attorney.

On June 8, 2017, Dorval's hearing was adjourned again in order to allow his attorney more time to prepare. On June 22, 2017, Dorval appeared with counsel in immigration court, but the hearing

---

[1] *See* ICE Directive No. 11002.1, *Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture*, eff. Jan. 4, 2010, available at https://www.ice.gov/doclib/dro/pdf/11002.1-hd-parole_of_arriving_aliens_found_credible_fear.pdf (last accessed Oct. 9, 2019).

was adjourned due to his recent filing of a Form I-589 Application for Asylum and Withholding of Removal. The hearing was rescheduled for March 26, 2018. Dorval remained on parole.

The hearing on March 26, 2018, hearing did not occur because the immigration judge ("IJ") retired and a new IJ had not been re-assigned.

In the early morning hours of December 1, 2018, Dorval was arrested by Customs and Border Protection ("CBP") officers in the vicinity of Champlain, New York. Dorval, who appeared to be wet from the knees down, was in the company of three other individuals from Haiti. Dorval lacked any documents allowing him to live, reside or work in the United States legally at the time of his arrest. He was transported to the Champlain Border Patrol Station for further investigation and processing. Because Dorval was apprehended within 100 miles of the border and could not show that he had been continuously present in the United States for the two weeks prior to the date of his entry, Dorval was processed for expedited removal pursuant to 8 U.S.C. § 1225(b). *See* 69 Fed. Reg. 48,877 (Aug. 11, 2004). However, he claimed a fear of returning to Haiti which was deemed credible by the interviewing officer. Consequently, Dorval was transferred to immigration proceedings pursuant to INA § 240, 8 U.S.C. § 1229a.

On December 13, 2018, Dorval pleaded guilty to violating 8 U.S.C. § 1325(a)(2), Improper Entry by Alien. He was sentenced to time served and fined $10.00

On December 22, 2018, Dorval was served with a Notice to Appear ("NTA"). However, immigration proceedings were already proceeding in Florida against Dorval. As he currently was detained in New York, the immigration court in Florida terminated its proceedings against him.

On February 11, 2019, DHS reviewed Dorval's custody status and decided to detain him pending a final administrative determination in his immigration proceedings. Dorval requested a custody redetermination hearing by an IJ.

On March 5, 2019, Dorval appeared in immigration court in Batavia, New York at which time he requested an adjournment to retain counsel. The hearing was rescheduled for April 9, 2019. A custody redetermination hearing before an IJ was also scheduled for that date.

On April 3, 2019, Dorval appeared with counsel before the IJ. Counsel requested additional time to prepare. The merits hearing and custody redetermination hearing were rescheduled for April 29, 2019.

On April 29, 2019, Dorval and his attorney appeared before the IJ. Counsel, however, filed a motion to withdraw as counsel and to withdraw the motion for bond. Because the motion for bond was

withdrawn, the IJ determined he could not review the evidence annexed to it during a bond proceeding. Dorval therefore requested that he be given time to submit evidence in relation to a new bond hearing. There is nothing in the record indicating that Dorval moved for a bond hearing after the first motion was withdrawn.

Also at the April 29, 2019, hearing, Dorval admitted the allegations in the NTA. The IJ accordingly found that he was removable as charged in the NTA. Because neither Dorval nor the IJ had a copy of his previously filed Form I-589, the IJ instructed Dorval to file a new I-589 by May 29, 2019. The removal hearing was adjourned until June 27, 2019.

Dorval failed to file a new I-589 by the May 29, 2019 deadline. Accordingly, DHS moved to deem the application abandoned. At a hearing on June 27, 2019, the IJ noted that Dorval had been instructed that the untimely filing of any applications for relief from removal could result in their being deemed abandoned. In addition, the IJ observed that Dorval had never sought an extension of his deadline to file his applications for relief. Although Dorval had filed an application for relief from removal on June 19, 2019, he failed to include with it a request for an extension or any explanation as to why it was not timely filed. The IJ decided that the late filing rendered the request abandoned and that Dorval's removability previously had been established on the record. The IJ therefore ordered Dorval removed to Haiti.

On July 5, 2019, the BIA received Dorval's appeal from the IJ's order of removal. As of September 13, 2019, the date of the Government's filing of its memorandum of law in this proceeding, the appeal remains pending before the BIA.

On July 18, 2019, Dorval filed his petition (Docket No. 1), asserting that his detention without a bond hearing violates the Due Process Clause of the Fifth Amendment and the Eighth Amendment's Excessive Bail Clause. He also seeks injunctive relief in the form of immediate release from detention and an order precluding DHS from transferring him to a different detention facility during the pendency of his removal proceedings. The Government filed an answer and return (Docket No. 4), declarations with supporting exhibits (Docket Nos. 4-1, 4-2 & 4-3), and a memorandum of law (Docket No. 5) in opposition to the petition. Dorval filed a pleading docketed as a reply (Docket No. 6) but which appears to be another petition raising what appear to be the same claims raised in the original petition. The matter was transferred to the undersigned on October 1, 2019 (Docket No. 7).

## III. Scope of Review

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID

Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42–43 (1st Cir. 2005) ("The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C.

§ 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (*per curiam*).

## IV. Discussion

### A. Detention under INA § 235, 8 U.S.C. § 1225(b)

#### 1. Statutory and Regulatory Framework

The Government asserts, and Dorval does not dispute, that INA § 235, 8 U.S.C. § 1225(b) ("Section 1225") governs his detention. Section 1225 applies to two types of aliens: "arriving aliens" and "certain other aliens."

An "arriving alien" is defined at 8 C.F.R. § 1001.1(q) and means

> an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked. . . .

8 C.F.R. § 1001.1(q). Individuals determined to be "[a]rriving aliens" are subject to expedited removal proceedings under 8 U.S.C. §§ 1225(b)(1)(A)(i) and (ii): The immigration officer "shall order"

them removed "without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution[,]" *id.*, in which case they "shall [be] refer[red] . . . for an interview by an asylum officer[.]" 8 U.S.C. § 1225(b)(2)(ii).

Title 8 U.S.C., Section 1225(b)(1)(A)(iii), titled "Application to certain other aliens" states as follows:

> The Attorney General may apply clauses (i) and (ii) of this subparagraph [regarding expedited removal] to any or all aliens described in subclause (II) as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.

8 U.S.C. § 1225(b)(1)(A)(iii).

The Secretary of the Department of Homeland Defense[2] has used this authority to designate any alien found within 100 miles of the United States border, who has not been continuously present within this country for the fourteen days preceding the encounter with border authorities, as being subject to expedited removal proceedings under 8 U.S.C. § 1225(b). *See* Government's Memorandum of Law ("Gov't Mem.") at 8 (citing Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004) ("It is anticipated under this designation that expedited removal will be

---

2 The Attorney General's authority pursuant to 8 U.S.C. § 1225(b)(1)(A)(iii)(I) was transferred to the Secretary of the Department of Homeland Security under the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. *See* otice Designating Aliens For Expedited Removal, 69 Fed. Reg. 48,877-01, 48,878 (Aug. 11, 2004).

employed against those aliens who are apprehended immediately proximate to the land border and have negligible ties or equities in the U.S. Nevertheless, this designation extends to a 100-mile operational range because many aliens will arrive in vehicles that speedily depart the border area, and because other recent arrivals will find their way to near-border locales seeking transportation to other locations within the interior of the U.S.").[3] Regardless of how classified—i.e., as an "arriving alien" or "certain other alien," the alien will be transferred from the expedited removal framework to immigration removal proceedings under 8 U.S.C. § 1229a, if he can demonstrate a "credible fear" of returning to his native country. 8 U.S.C. § 1225(b)(A)(1)(ii).[4]

Aliens detained pursuant to Section 1225(b) may be awarded discretionary parole into the country by the Attorney General, pending their application to be admitted or for asylum. *See* INA §

---

3 The Court will refer to such aliens as "certain other aliens."

4 *See also* Designating Aliens For Expedited Removal, 69 Fed. Reg. at 48879 ("All aliens placed into expedited removal as a result of this designation will have the same rights to a credible fear screening by an asylum officer, and the right to review of an adverse credible fear determination by an immigration judge, that are provided to arriving aliens who are currently placed into expedited removal after being denied admission at a port of entry. Any alien who falls within this designation, who is placed in expedited removal proceedings, and who indicates an intention to apply for asylum or who asserts a fear of persecution or torture will be interviewed by an asylum officer who will determine whether the alien has a credible fear as defined in section 235(b)(1)(B)(v) of the Act, 8 U.S.C. 1225(b)(1)(B)(v). If that standard is met, the alien will be referred to an immigration judge for a removal proceeding under section 240 of the Act, sections 235(b)(1)(A)(ii) and (B) of the Act, 8 U.S.C. 1225(b)(1)(A)(ii) and (B); 8 CFR 235.3(b)(4).").

212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A),[5] 8 C.F.R. § 212.5(a), § 212.5(b)(5). ICE Directive 11002.1, "Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture," explains that "[b]y statute, parole may be used, in the discretion of ICE and under such conditions as ICE may prescribe, only for urgent humanitarian reasons or for significant public benefit[,]" which "include the five categories set forth in 8 C.F.R. § 212.5(b) . . . , including the general category of 'aliens whose continued detention is not in the public interest.'" *Id.* § 5.3. "Parole does not constitute a lawful admission or a determination of admissibility[.]" *Id.* (citing INA §§ 212(d)(5)(A), 101 (a)(13)(B)). Reasonable conditions may be imposed by ICE on parolee. *Id.* (citing 8 C.F.R. § 212.5(d)).

**2. Relevant BIA Rulings**

**a. *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005)**

In *Matter of X-K-*, the BIA held that an asylum seeker who is initially placed in expedited removal proceedings under INA § 235(b)(1)(A), 8 U.S.C. § 1225(b)(1)(A), but who then is placed in

---

5 Subject to certain exceptions not applicable here, INA § 212(d)(5)(A) provides that "[t]he Attorney General *may*, . . . *in his discretion*[,] parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis *for urgent humanitarian reasons or significant public benefit* any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and *when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled* and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphases supplied).

regular removal proceedings under INA § 240, 8 U.S.C. § 1229a proceedings after a positive credible fear determination, is eligible for a bond hearing before an IJ, unless the alien is a member of any of the listed classes of aliens who are specifically excluded from the custody jurisdiction of IJs pursuant to 8 C.F.R. § 1003.19(h)(2)(i). *Id.* at 731; *see also id.* at 733; 736. *Matter of X-K-* did not apply to "arriving aliens," i.e., those individuals who presented at a port of entry and claimed asylum; instead, it applied to the class of aliens who entered the United States without inspection and who have been present for fewer than 14 days within 100 miles of the border.[6]

The BIA noted that "the [INA] provides for the mandatory detention of aliens who are being processed under section 235(b)(1) proceedings '*pending a final determination of credible fear* of persecution and, if found not to have such a fear, until removed.'" 23 I. & N. Dec. at 734. However, the BIA detected a "regulatory gap" in 8 C.F.R. § 1235.3(c) with regard to the custody jurisdiction over "certain other aliens" who are placed in removal proceedings. *Id.* at 735. In other words, the BIA found that the regulations were silent on the bond eligibility of asylum seekers who are in removal proceedings pursuant to a final positive

---

6 When Dorval first arrived in the United States in May 2016, he was released on discretionary parole. When Dorval subsequently encountered customs officials near the Canadian border in December 2018, however, he was arrested and processed for expedited removal as a "certain other alien" due to his proximity to the Canadian border and his arrest on the date of his entry to the United States.

credible fear determination. *Id.* The BIA rejected DHS's argument that certain language in the Notice Designating Aliens for Expedited Removal, 69 Fed. Reg. at 48,877-81, filled the "gap" and instead determined it was bound to follow the regulations at 8 C.F.R. Chapter V, Executive Office for Immigration Review, Department of Justice. *Matter of X-K-*, 23 I. & N. Dec. at 735. Thus, the BIA rejected DHS's argument that it retained exclusive custody jurisdiction over aliens who have been placed in INA § 240 removal proceedings after having been initially screened and detained for expedited removal as "certain other aliens" pursuant to the authority in INA § 235(b)(1)(A)(iii). *Id.* at 734. The BIA agreed that the IJ in that case did not act outside of her general custody jurisdiction in awarding bond to the respondent. *Id.* at 736.

**b. *Matter of M-S-*, 27 I. & N. Dec. 509 (U.S. Atty. Gen. 2019)**

On April 16, 2019, the Attorney General issued a self-certification finding *Matter of X-K-* to have been "wrongly decided" and overruling it. *Matter of M-S-*, 27 I. & N. Dec. at 510. In *M-S-*, the alien was transferred from expedited to full removal proceedings after establishing a credible fear, and an IJ ordered his release on bond. The Attorney General disagreed with the the BIA's statutory interpretation in *Matter of X-K-* and concluded that the "text . . . mandate[d]" the conclusion that "aliens who are

originally placed in expedited proceedings and then transferred to full proceedings after establishing a credible fear . . . remain ineligible for bond, whether they are arriving at the border or are apprehended in the United States." *Matter of M-S-*, 27 I. & N. Dec. at 515. Thus, the Attorney General reversed the IJ's decision granting bond and ordered that, unless DHS paroles him under INA § 212(d)(5)(A) of the Act, he "must be detained until his removal proceedings conclude." *Id.* at 516. *Matter of M-S-* was set to take effect on July 15, 2019.

### 3. The Nationwide Injunction in *Padilla*

After *Matter of M-S-* had been referred to the Attorney General but before the decision was issued, the United States District Court for the Western District of Washington issued a preliminary injunction in *Padilla v. US Immigration & Customs Enf't*, No. C18-928 MJP, 379 F. Supp.3d 1170 (W.D. Wash. Apr. 5, 2019), *as modified by* 387 F. Supp.3d 1219 (W.D. Wash. July 2, 2019), *appeal filed*, 19-35565 (9th Cir. July 5, 2019). The district court determined that Padilla and the class members (defined as all detained asylum seekers who entered the U.S. without inspection, who were initially placed in expedited removal proceedings, and who were determined to have a credible fear of persecution) were likely to succeed on the merits; that they would suffer irreparable harm in the absence of the injunction; that, on balance, the equities favored them; and that the injunction was in the public interest.

In Part A of the injunction, the district court required that the Executive Office of Immigration Review ("EOIR"), of which Immigration Judges are a part, hold bond hearings within seven days at which DHS bears the burden of proof, release any class member whose detention exceeded that limit, produce a verbatim hearing transcript, and issue written decisions on the same day a bond hearing is held. In Part B of the injunction, the district court ordered that the Bond Hearing Class was entitled, as a constitutional matter, to bond hearings pending resolution of their asylum applications.

ICE appealed, and on July 12, 2019, the Ninth Circuit imposed a temporary stay of the preliminary injunction. On July 22, 2019, the Ninth Circuit partially lifted the stay. *See* Order, Docket No. 18 in *Padilla v. Immig. and Customs Enf't*, No. 19-35565 (9th Cir. July 22, 2019).[7] Noting that the Government failed to persuasively show irreparable harm if required to provide bond hearings as it had done in the years before *Matter of M-S-*, and "failed to show a likelihood of success on the merits of its underlying argument that [it] may indefinitely detain the plaintiffs without affording bond hearings at all[,]" the Ninth Circuit declined to stay Part B of the injunction. *Id.* at 2. Thus, under the Ninth Circuit's order, the Government must continue to provide bond hearings for persons

---

[7] A copy of the Ninth Circuit's *Padilla* order is attached to this Decision and Order as Appendix A.

who enter without inspection and then pass a credible fear interview while *Padilla* is on appeal. In so ruling, the Ninth Circuit upheld the district court's order which enjoined the operation of *Matter of M-S-*. However, the Ninth Circuit maintained the stay as to Part A of the injunction, agreeing with the Government that enforcement of the seven-day timeline and enhanced procedural protections would impose a short-term hardship on the immigration system. *Id.* at 3. In addition, the Ninth Circuit concluded, the public interest does not weigh heavily against a stay as to these procedural requirements. Thus, effective July 22, 2019, class members should continue to receive bond hearings, but they will not be entitled to the additional protections ordered by the district court, i.e., bond hearings held within seven days; the burden of proof shifted to DHS to demonstrate why the alien should not be released on bond, parole, or other conditions; verbatim recordings/transcripts of the hearings; and contemporaneous individualized written findings). The Ninth Circuit explained that "[t]his result maintains the *status quo ante*" and leaves "the pre-existing framework in place" pending resolution of the appeal. *Id.* *Padilla* is on an expedited schedule and is set to be argued in October 2019. *Id.*

**B. Petitioner's Claims**

**1. The Due Process Claim Regarding the Lack of a Bond Hearing**

The Government argues that Dorval's claim that his detention without a bond hearing violates the Due Process CLause is unexhausted because Dorval, through counsel, withdrew his request for a bond hearing at the administrative level and never filed a renewed request for an individualized custody determination by an IJ, despite being afforded the opportunity to do so.

As the Government notes, while "[t]here is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus[,]" "such exhaustion is generally required as a prudential matter." *Paz Nativi v. Shanahan*, No. 16-CV-8496(JPO), 2017 WL 281751, at *2 (S.D.N.Y. Jan. 23, 2017) (citing *Howell v. I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995); other citations omitted)). The Second Circuit has recognized several exemptions to administrative exhaustion: "'(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'" *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)).

The Government also mentions, in a footnote, the Attorney General's decision in *Matter of M-S-*, *supra*, and notes that it is "now the subject of a nationwide injunction," Gov't Mem. at 9 n.4.

Presumably, the Government is referring to the *Padilla* case pending before the Ninth Circuit. The Government asserts that since Dorval is able to request a bond hearing under the *Padilla* injunction, this is another reason why he has failed to exhaust his administrative remedies. *Id.*

Dorval has not responded to the Government's non-exhaustion arguments. The Court is cognizant of Dorval's *pro se* status, his apparent lack of fluency in English, and his unfamiliarity with the law. As noted above, for his reply, he simply submitted another form habeas petition. Thus, it is entirely possible that Dorval is not aware of the nationwide injunction in *Padilla*. Where, as here, the petitioner is unrepresented, his papers are held to less stringent standards than those drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Indeed, the Court is obliged to construe *pro se* pleadings liberally and to interpret them as raising the strongest arguments they suggest. *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted).

Here, the Government concedes that Dorval is entitled to a bond hearing pursuant to the nationwide injunction in *Padilla* but faults Dorval, who lacks the assistance of an attorney, for not requesting such a hearing. However, "habeas corpus is, at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995). "Under 28 U.S.C. § 2243, a district court entertaining an application for a writ of habeas corpus must 'dispose of the matter

as law and justice require.'" *Singh*, 362 F. Supp.3d at 104 (quoting 28 U.S.C. § 2243).

**2. Remedy**

With the foregoing principles in mind, the Court has fashioned the following habeas remedy: First, the Court will order the Government to provide Dorval with the bond hearing—to which it concedes he is entitled—under the Ninth Circuit's *Padilla* order within ten (10) days of the date of this Decision and Order. As set forth in the Ninth Circuit's order partially lifting the stay in *Padilla*, the bond hearing may be conducted in accordance with "the pre-existing framework" set forth in regulations applicable to bond hearings held under 8 U.S.C. § 1226(a). While this Court and other district courts in this Circuit have ruled that Due Process requires imposition of the clear-and-convincing burden of proof on the Government, the Court is not ruling on any Due Process claim at this juncture. Rather, the Court is simply directing the Government to provide a bond hearing to Dorval in accordance with the Ninth Circuit's latest ruling in connection with the nationwide *Padilla* injunction, which specifically declined to impose any heightened procedural requirements on the Government pending the resolution of the appeal.

**3. The Court Will Refrain From Ruling on the Constitutional Claims**

Because the Court is directing the Government to hold a bond hearing under *Padilla*, it is possible that Dorval will be released

under an order of supervision, thereby mooting his Due Process claim, as well as his claim under the Eighth Amendment's Excessive Bail Clause. Accordingly, the Court need not rule on them at this time.

**B. The Request for an Injunction on Transfer**

Dorval has requested an order enjoining the Government from removing him from the jurisdiction of this Court during the consideration of his petition. The Government counters with several arguments as to why the Court lacks jurisdiction over this request and why it lacks merit, including that any decisions regarding the place of confinement for noncitizens subject to removal are within the Attorney General's discretion, and that the authority to transfer Dorval to another facility rests with DHS. The Government cites, *inter alia*, 8 U.S.C. §§ 1231(g)(1), 1252(a)(2)(B)(ii).

Now that the Court has conditionally granted the habeas petition, Dorval's "jurisdictional concerns are not unreasonable[,]" *Singh v. Whitaker*, 362 F. Supp.3d 93, 106 (W.D.N.Y. 2019), *appeal withdrawn sub nom. Singh v. Barr*, No. 19-729, 2019 WL 2590582 (2d Cir. May 1, 2019), since "'conditional writs "would be meaningless" if a habeas court could not determine compliance with them and order sanctions accordingly.'" *Id.* (quoting *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 368 n.5 (6th Cir. 2006))).

As the Government observes, "[t]he Attorney General is mandated to 'arrange for appropriate places of detention for aliens detained pending removal.'" *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (citing 8 U.S.C. § 1231(g)(1)). "The Attorney General's discretionary power to transfer aliens from one locale to another, as [he or] she deems appropriate, arises from this language." *Id.* (holding that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a *Bivens* class action suit") (citing *Rios–Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) (interpreting former statute now codified as 8 U.S.C. § 1231(g); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988); footnote and other citation omitted)).

Regardless of the breadth of the Attorney General's authority to decide where Dorval is detained, "[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). In other words, regardless of where Dorval is housed, this Court retains jurisdiction over his habeas petition. *Singh*, 362 F. Supp.3d at 106 (citing *Santillanes*, 754 F.2d at 888. Therefore, "there no need to interfere with DHS's authority to 'arrange for appropriate places of detention' under 8 U.S.C. § 1231(g)(1)." *Id.*

## V. Conclusion

For the foregoing reasons, the petition is conditionally granted to the extent that the Government is directed to bring Dorval before an IJ within ten (10) days for a bond hearing in accordance with the Ninth Circuit's order in *Padilla*, attached hereto as Appendix A. The Government is directed to file a status update with the Court within three (3) days of the date of Dorval's bond hearing regarding the outcome of the hearing.

Pending completion of the bond hearing ordered herein, and until further action by this Court, the constitutional claims in the petition will be stayed. If Dorval is not released on bond, the Court will proceed to consider the constitutional claims asserted in the petition. If Dorval is released on bond, then the Court will dismiss the petition as moot.

**SO ORDERED.**

*s/ Michael A. Telesca*

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: October 10, 2019
Rochester, New York.

# Appendix A

*Padilla et al. v. ICE, et al.*, No. 19-35565 (9th Cir. July 2, 2019)

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 22 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| YOLANY PADILLA; et al.,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT; et al.,<br><br>Defendants-Appellants,<br><br>and<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, FKA Department of Social Services; et al.,<br><br>Defendants. | No. 19-35565<br><br>D.C. No. 2:18-cv-00928-MJP<br>Western District of Washington, Seattle<br><br>ORDER |

Before: SCHROEDER, CANBY, and CHRISTEN, Circuit Judges.

The temporary stay imposed on July 12, 2019 is lifted. Appellants' emergency motion for a stay of the district court's April 5, 2019 and July 2, 2019 orders pending appeal (Dkt. Entry No. 10) is granted in part and denied in part.

Our court has interpreted *Nken v. Holder*, 556 U.S. 418 (2009), to stand for the proposition that a stay applicant:

> "must show that irreparable harm is probable *and either*:
> (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or

> (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor."

*Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (emphasis added).

In Part B, the district court ordered that the Bond Hearing Class is constitutionally entitled to bond hearings pending resolution of their asylum applications. The government raises a serious question whether, under 8 U.S.C. § 1252(f)(1), the district court lacked the authority to enter Part B of this classwide injunctive relief. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018); *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 481–82 (1999); *see also Nken*, 556 U.S. at 431 (describing § 1252(f)(1) as "a provision prohibiting classwide injunctions against the operation of removal provisions"); *Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018) (same). But the government does not contend that § 1252(f)(1) prohibited the district court from entering an injunction with respect to the individual class representatives' Part B claims. Nor has the government made a persuasive showing that it will suffer irreparable harm if it is required to provide bond hearings pending the outcome of this appeal in the same way it had done for several years before the Attorney General issued *Matter of M-S-*, 27 I. & N. Dec. 509, 509 (BIA 2019). *See Leiva-Perez*, 640 F.3d at 970. Further, the government failed to show a likelihood of success on the merits of its underlying argument that the government may indefinitely detain the plaintiffs without affording bond hearings at all. We therefore decline to stay Part B of the

district court's injunction.

In Part A, the district court's injunction requires that the Executive Office of Immigration Reform (EOIR) hold hearings within seven days, release any class member whose detention exceeds that limit, produce a verbatim transcript, shift the burden of proof to the Department of Homeland Security, and issue written decisions on the same day a bond hearing is held. Although the government has not been able to quantify the number of individuals who have received credible fear determinations and are subject to detention, it nevertheless makes a persuasive showing that the requirements of Part A are particularly burdensome. We conclude that permitting Part A's procedural requirements to take effect pending the outcome of this appeal—which would require the government to implement a set of rules that may be only temporary—would impose short-term hardship for the government and its immigration system, and that the public interest does not weigh heavily against a stay. Accordingly, we stay Part A of the district court's injunction.

This result maintains the *status quo ante* during what is now an expedited appeals process. *See Nken*, 556 U.S. at 429 ("A stay 'simply suspend[s] judicial alteration of the status quo[.]'" (quoting *Ohio Citizens for Responsible Energy v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). Our decision leaves the pre-existing framework in place while a merits panel resolves this appeal.

Appellants' request to expedite the consideration of the merits of this preliminary injunction appeal is granted. The current briefing schedule shall remain in effect. The clerk shall place this appeal on the calendar for October 2019. *See* 9th Cir. Gen Order 3.3(g).